OPINION
{¶ 1} John Scales appeals from his conviction and sentence in the Champaign County Common Pleas Court on one count of rape and one count of assault.
 {¶ 2} The record reflects that police arrested Scales after an individual named "N.B." accused him of sexually assaulting her at a party. He was indicted on March 28, 2002, and charged with two counts of rape, one count of kidnaping, and one count of assault. The matter proceeded to trial, and the trial court dismissed one of the rape counts pursuant to Crim.R. 29(A). A jury subsequently found Scales guilty of the other three charges. The trial court then determined that the rape and kidnaping counts were allied offenses of similar import, and the State elected to proceed on the rape conviction. Following a pre-sentence investigation, the trial court imposed a five-year sentence for the rape conviction and a concurrent six-month sentence for the assault conviction.
 {¶ 3} On April 7, 2003, Scales' appellate counsel filed a brief pursuant to Anders v. California (1967), 386 U.S. 738, asserting the absence of any meritorious issues for our review and seeking permission to withdraw. Appellate counsel nevertheless did argue that Scales' convictions are against the manifest weight of the evidence.[1] Scales then filed a pro se brief, asserting various errors. First, he argues that his convictions are against the weight of the evidence. Second, he contends a police interview was unconstitutional. Third, he claims his constitutional rights were violated because his jurors were all white and they were influenced by pretrial media publicity. Fourth, he asserts that the trial court erred in imposing more than a minimum sentence.
 {¶ 4} Upon review, we find that none of the foregoing arguments are even potentially meritorious. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 5} In the present case, appellate counsel presents a one-paragraph argument as to the weight of the evidence, asserting that Scales and N.B. engaged in consensual sex and that any injuries she received were caused by a fall. For his part, Scales also argues, as he did at trial, that his sexual activity with N.B. was consensual and that she fell down a flight of stairs. In addition, he asserts that if he had assaulted her, her injuries would have been much more serious than they were. In connection with his manifest-weight argument, Scales also contends that a pair of jeans worn by N.B. were neither torn nor inside-out because she assisted him in removing them. Finally, he asserts that someone edited a videotape of the party by removing footage that would have shown N.B. injuring herself falling down the stairs.
 {¶ 6} Having reviewed the entire trial transcript, we conclude that Scales' convictions are not against the manifest weight of the evidence. The record reflects that approximately thirty minutes before N.B. was assaulted, all but three people — Scales, N.B., and an individual named Adrian Kueker — had gone to a "Steak-N-Shake" restaurant to eat. Kueker then left the party, leaving N.B. asleep upstairs and Scales downstairs on a couch. N.B. testified at trial that someone then entered an upstairs bedroom where she was resting after drinking too much at the party. According to N.B., this individual wrapped her head in a blanket and started hitting her. She fell to the floor during the struggle and had difficulty breathing because the blanket was choking her. As her assailant continued hitting her, he threw her back on the bed and placed a knee in the middle of her back. The individual pulled down her jeans and ripped off her underwear. N.B. testified that he then "started placing his fingers in my vagina area and licking me and slapping me around, it hurt." The incident ended with the individual suddenly running out of the room and down the stairs. As her assailant left, N.B. removed the blanket from her head and saw "a short stocky black guy" running away.
 {¶ 7} Scales, who is black, admitted at trial that he penetrated N.B.'s vagina with his finger. For purposes of the rape charge, the only disputed issue was whether he compelled N.B. to submit to this sexual conduct by force or threat of force. In addition to N.B.'s testimony, which supports a finding of compulsion by force, the State presented testimony from Eleanor McGuire, a registered nurse who examined N.B. following the incident. McGuire reported observing redness on N.B.'s neck, an abrasion on her elbow, a bruise on her left thigh, redness and swelling on her back, and an abrasion on her shoulder. This physical evidence also supports a finding that Scales compelled N.B. to submit to the sexual conduct by force and that he assaulted her. Finally, the record reflects that Scales left the house in his car just as the group returned from the Steak-N-Shake. Upon entering the house, the returning individuals found the upstairs bedroom mattress half off of the box springs and a cracked dresser mirror. They then discovered N.B., alone, crying in the bathroom, dressed in nothing but a tank top. This evidence also supports a finding that Scales' sexual encounter with N.B. was not a consensual one.
 {¶ 8} Although Scales testified at trial and insisted that the sexual conduct was consensual, the jury's verdicts on the rape and assault charges were not against the manifest weight of the evidence. The jury was entitled to disbelieve Scales' testimony that N.B. sustained her injuries when she fell down a flight of stairs. We also find no merit in his argument that her injuries were too mild to be the result of an assault by him. Furthermore, the fact that N.B.'s jeans were neither torn nor inside-out does not render the jury's verdicts against the manifest weight of the evidence. Scales could have removed the jeans, against N.B.'s will, without tearing them or turning them inside-out. Finally, the record contains no evidence to support Scales' assertion that someone edited a videotape of the party by removing footage that would have shown N.B. injuring herself falling down stairs. In short, we simply cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in this case. As the evidence does not weigh heavily against Scales' convictions, they are not against the manifest weight of the evidence.
 {¶ 9} In a second assignment of error, Scales contends his constitutional rights were violated when a police officer questioned him. Although the nature of the alleged constitutional violation is unclear, Scales appears to believe that his constitutional rights were violated when (1) the police officer taped only part of the interview and (2) when the tape was not played in court. Upon review, we find no merit in either assertion. At trial, the police officer explained why he taped only part of the interview. More importantly we are unaware of any authority for the proposition that a defendant has a constitutional right to have his police interview recorded. With regard to the second issue, the State elected to have the police officer testify about Scales' responses rather than playing the lengthy tape for the jury. Although the tape itself may have been admissible, the State was not obligated to play it. The police officer was entitled to testify about what Scales had told him because Scales' statements constituted admissions of a party-opponent under Evid.R. 801(D)(2).
 {¶ 10} Scales next argues that his constitutional rights were violated because his jurors were all white and they were influenced by pretrial media publicity. We find no merit in either proposition. Unfortunately for Scales, the record does not reflect the race of any member of the jury venire, there is no indication whether any of the dismissed jurors were black, and defense counsel made no Batson challenge to the State's peremptory dismissals. Under these circumstances, we find no violation of Scales' constitutional rights based on the racial composition of his jury. With regard to pretrial publicity, Scales' only argument is that a local newspaper published an article about his case on the first day of trial. Even assuming this assertion is true (the article is not in the record before us), nothing in the record suggests that any juror read the article, the jurors professed no outside knowledge of the case, and Scales never moved for a change of venue. In light of these facts, we find no violation of Scales' right to a fair trial as a result of pretrial publicity.
 {¶ 11} In a third assignment of error, Scales contends the trial court erred in imposing more than a minimum sentence. In support, he argues that a statutory minimum sentence was warranted because (1) he had no prior criminal record, (2) the State indicated that he was not likely to commit future crimes, and (3) he had no pattern of alcohol or drug abuse.
 {¶ 12} Upon review, we find this assignment of error to be without merit. The potential penalty for Scales' rape conviction was three to ten years in prison. See R.C. § 2929.14(A)(1). The trial court imposed a sentence of five years. Section 2929.14(B) of the Revised Code provides: "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Section 2929.14(B) does not "require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson,86 Ohio St.3d 324, 326, 1999-Ohio-110.
 {¶ 13} In this case, the trial court found that imposing the minimum sentence would demean the seriousness of the offense and fail adequately to protect the public. Under Edmonson, nothing more was required. We note, however, that the trial court also gave reasons to support its findings. In particular, it cited "[t]he reasons outlined by the prosecutor as to the manner in which the offense took place[.]" Those reasons included, among other things, the fact that the victim was in a particularly vulnerable state, that she was attacked from behind and beaten after a blanket was thrown over her head, and that the offense was a violent rape that resulted in physical injury. At a minimum, these reasons are sufficient to support the trial court's finding that a minimum sentence would demean the seriousness of the offense. As a result, the trial court did not err in imposing a five-year sentence for the rape conviction,[2] and we overrule Scales' third assignment of error.
 {¶ 14} In conclusion, we have fulfilled our obligation to conduct an independent review of the record, including all transcripts, and have found no potentially meritorious issues for direct appeal. Accordingly, the pending motion to withdraw as counsel is sustained, and the judgment of the Champaign County Common Pleas Court is affirmed.
Judgment affirmed.
Wolff, J., and Grady, J., concur.
[1] Anders outlines a particular format for these types of cases. Specifically, defense counsel must ask for permission to withdraw and also must file a brief referring to anything in the record that arguably might support an appeal. We then are required independently to examine the record before we may grant the motion to withdraw. If our review discloses colorable claims, we appoint new counsel to help the defendant present an argument.
[2] Although the parties appear to focus on the rape sentence, we note that the trial court also imposed a maximum six-month sentence for the misdemeanor assault conviction. Nevertheless, any argument with regard to this sentence would be moot because Scales has served more than six months in prison, and the trial court ordered the rape and assault sentences to be served concurrently.