DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kenneth Mathers, appeals the decision of the Lorain County Court of Common Pleas, which found him guilty of sexual battery. This Court affirms.
 I. {¶ 2} Amanda Sova lived in Lorain, Ohio, with her daughter, boyfriend, Michael Skobel, and her cousins, James Ward and Brian Harkless. Early in the morning of March 22, 2007, Sova awoke to find Mathers kneeling on her bed, masturbating with one hand, and digitally penetrating her vagina with his other hand. Sova jumped out of bed and tried to get Mathers out of her house. Sova called police who arrived quickly and arrested Mathers.
 {¶ 3} Mathers was indicted by the Lorain County Grand Jury on two counts of sexual battery, violations of R.C. 2907.03(A)(2) and (3). Following a trial, the jury found Mathers guilty of both counts. The trial court sentenced Mathers to a prison term of four years and notified him of his duty to register as a sexually oriented offender. *Page 2 
 {¶ 4} Mathers timely appealed his convictions to this Court, setting forth three assignments of error for review. The assignments of error have been rearranged for purposes of this Court's review.
 II. ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN VIOLATION OF [CRIM.R.] 29, ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ENTERED JUDGMENT OF CONVICTION, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his second and third assignments of error, Mathers asserts that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} As a preliminary matter, this Court notes that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 7} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to *Page 3 
the prosecution. Id. "In essence, sufficiency is a test of adequacy."Thompkins, 78 Ohio St.3d at 386.
 {¶ 8} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Sufficiency is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 10} Appellant was convicted of two counts of sexual battery pursuant to R.C. 2907.03(A)(2) and/or (3) which provide:
 "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.
 "(3) The offender knows that the other person submits because the other person is unaware that the act is being committed." *Page 4 
 {¶ 11} Ms. Sova testified on behalf of the State at trial. Ms. Sova testified that she and Mathers had been involved in an altercation a couple of years before the incident at issue in the present appeal. She dropped the charges against Mathers, but the State pursued the matter. She testified that she never threatened to accuse Mathers of rape as a result of the previous altercation.
 {¶ 12} With regard to the incident in March 2007, Ms. Sova testified that she, her boyfriend Michael, her cousins Brian and James, and Mathers went to the bar across the street from her house. She had four shots of Jack Daniels and five or six beers. She went home around 11:00 p.m. or 11:30 p.m. because she was supposed to help Michael with his paper route. Brian, James, Michael, and a girl that Brian met at the bar went home with her. Mathers did not leave the bar at that time. Upon arriving back at her house, she ate a little then went to sleep around midnight or 12:30 a.m. Michael went up to bed while she was eating.
 {¶ 13} Ms. Sova stated that she does not remember any sexual contact with Michael that night, although she later learned they did have sex. She said she was drunk and probably passed out. Ms. Sova testified that she did not hear the alarm clock go off when Michael got up to deliver papers. Ms. Sova testified that the next thing she remembers after getting into bed with Michael was waking up to Mathers digitally penetrating her vagina. Ms. Sova stated that she jumped up out of bed and told Mathers to get out of her house. Ms. Sova said that he refused to leave and asked to have further sexual relations with her. At that point, Ms. Sova ran downstairs to her cousin Brian's room and pounded on his bedroom door. Brian came to the door and Ms. Sova told him to go upstairs and get Mathers out of her house. Brian yelled for their cousin James and told him to go upstairs with Ms. Sova. *Page 5 
 {¶ 14} When Ms. Sova and James arrived upstairs, Mathers was lying on top of Ms. Sova's daughter's bed. James told him to leave. Mathers went downstairs and sat on the couch. Ms. Sova demanded that Mathers leave her house, but he refused. Ms. Sova began hitting and scratching him. At some point, Ms. Sova called the police. When the police arrived at Ms. Sova's house, the police took her statement and she was transported to the Nord Center. At the Nord Center, Ms. Sova was examined.
 {¶ 15} During cross-examination, Ms. Sova denied telling her cousin, Melissa Leiva, that she would cry rape if she had to in order to get Mathers in trouble.
 {¶ 16} Brian Harkless and James Ward also testified on behalf of the State at Mathers' trial. Both corroborated Ms. Sova's testimony regarding the events that took place at the bar and Ms. Sova's house on the night in question.
 {¶ 17} The State also called Ms. Sova's boyfriend, Michael Skobel, as a witness. Mr. Skobel corroborated the testimony of Ms. Sova, Mr. Harkless, and Mr. Ward as to what happened at the bar and at Ms. Sova's home up until he left to deliver the papers. When questioned regarding what happened when the group returned to his house from the bar, Mr. Skobel stated that he went upstairs and went to bed while Ms. Sova went into the kitchen to get something to eat. Mr. Skobel testified that Ms. Sova came upstairs about a half an hour after he went to bed. He stated that the two engaged in sexual relations before going to sleep.
 {¶ 18} Mr. Skobel further testified that the alarm clock went off at 2:30 a.m. Ms. Sova woke up for a second and told him that she was not going with him to deliver newspapers. Mr. Skobel got ready and went downstairs to ask Brian if he could borrow his car. Mr. Skobel stated that when he was talking to Brian in the dining room, Mathers was in a recliner in the living room. Mr. Skobel testified that he left to deliver the papers around 3:30 a.m. *Page 6 
 {¶ 19} Mr. Skobel stated that about an hour into his paper route, James called him and said that there was an ordeal at the house. Mr. Skobel said that the finished the paper route before returning home. Brian and James were the only people at the house when he got home. Mr. Skobel testified that Ms. Sova came home about an hour after he got home from delivering the papers.
 {¶ 20} Officer Joshua McCoy of the Lorain Police Department also testified on behalf of the State at Mathers' trial. Officer McCoy testified that he was the first officer to arrive at Ms. Sova's home on March 22, 2007. Officer McCoy stated that upon approaching the front of the house, he heard yelling and screaming. When he knocked on the front door, someone opened a side door and he approached the side of the house. Officer McCoy said that when he reached the side of the house, he saw Ms. Sova wrapped in a blanket, appearing to be partially naked. Officer McCoy stated that Ms. Sova appeared to be very distraught. Officer McCoy said that when he spoke with Ms. Sova, she repeatedly asked him to get Mathers out of her house. Officer McCoy testified that he spoke with Ms. Sova, Mathers, and two other males who were at the home when he arrived. Ms. Sova told him that the group went to the bar, she came home, went to sleep naked, and awoke to find Mathers standing over her. Ms. Sova stated that Mathers assaulted her by placing his finger inside her vagina. Ms. Sova further stated that Mathers was masturbating while he assaulted her. Officer McCoy further testified that when he asked Mathers what happened, Mathers stated that nothing happened. Officer McCoy placed Mathers under arrest and another officer transported him to the Lorain County Correctional Facility.
 {¶ 21} Detective Mark J. Carpentiere also testified on behalf of the State. Detective Carpentiere was assigned this case on March 22, 2007. Detective Carpentiere stated that he began his investigation by reviewing the police report. Detective Carpentiere said that he *Page 7 
obtained Mathers's consent to collect two buccal swabs and that he also photographed him. Detective Carpentiere testified that he decided not to take any samples from Mathers's hand or fingers because the samples could have been contaminated due to the amount of time that elapsed between the incident between Mathers and Ms. Sova and his interview with Mathers. On cross-examination, Detective Carpentiere stated that his interview with Mathers was recorded.
 {¶ 22} Melissa Leiva, Ms. Sova's cousin, testified on behalf of the defense. Ms. Leiva testified that she had a conversation with Ms. Sova in July 2006 during which Ms. Sova stated that she would do whatever it took even if it meant crying rape to get Mathers locked up for what he had done to her. Ms. Leiva stated that the incident to which Ms. Sova was referring between her and Mathers took place in 2002.
 {¶ 23} After a thorough review of the record, this Court cannot find that the jury lost its way and committed a manifest miscarriage of justice when it found Mathers guilty of sexual battery. The evidence presented at trial proved that Mathers engaged in sexual conduct with Ms. Sova when he knew that her ability to appraise or control her own conduct was substantially impaired or that she submitted because she was unaware that the act was being committed. Mathers knew that Ms. Sova spent the evening at a bar drinking alcohol. And he digitally penetrated her vagina at a time when she was passed out as a result of her alcohol consumption.
 {¶ 24} This is not the exceptional case where the evidence presented weighs heavily in favor of the defendant and against conviction. Accordingly, this Court finds that Mathers' convictions were not against the manifest weight of the evidence. Having found that Mathers' convictions were not against the manifest weight of the evidence, we also conclude that there *Page 8 
was sufficient evidence to support the jury's verdict in this case with respect to the offenses. See Roberts, supra. Mathers's second and third assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION IN ITS RULINGS REGARDING [EVID.R.] 106[.]"
 {¶ 25} In his first assignment of error, Mathers argues that the trial court erred in denying his request to introduce the entire recording of his statement taken at the police station pursuant to Evid. R. 106. This Court disagrees.
 {¶ 26} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 27} Mathers sought to introduce a recording of an interview he gave at the police station. He argues that Evid. R. 106 required the trial court to admit the recording. Evid. R. 106 states:
 "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." *Page 9 
This Rule allows the adverse party to immediately put the admitted statements into context by permitting the party to simultaneously admit the remainder of the writing or recording. State v. Byrd, 9th Dist. No. 03CA008230, 2003-Ohio-7168, at ¶ 26, citing McCormick, Evidence (2 Ed., Cleary Ed. 1972) Section 56. This prevents one party from taking statements out of context and distorting them. State v. Barna (Nov. 3, 1993), 9th Dist. No. 93CA005564.
 {¶ 28} Evid. R. 106 provides no claim to Mathers. First, the rule addresses a "writing or recorded statement" but the State offered neither, relying instead on the detective's live testimony. Even though the recorded statement is admissible if offered by the State, the State is not required to play it. State v. Scales, 2d Dist. No. 2002-CA-27,2004-Ohio-175, ¶ 9. The State can ask the interviewing officer to testify about the defendant's statements. Id.
 {¶ 29} Second, the rule is limited to those parts of statements that are otherwise admissible. State v. Lewis, 7th Dist. No. 03 MA 36,2005-Ohio-2699, ¶ 126. The State asked Detective Carpentiere to testify about what Mathers told him during his interview. When offered by the State, this testimony was admissible as a party admission pursuant to Evid. R. 801(D)(2)(a). But Mathers' statement was admissible non-hearsay only if offered by the State. Mathers could not use Evid. R. 106 to offer his own out of court statement. In re Coy (1993), 67 Ohio St.3d 215,218; State v. Gatewood (1984), 15 Ohio App.3d 14, 16.
 {¶ 30} Accordingly, Mathers' statements to Detective Carpentiere that were not offered by the State are inadmissible hearsay unless some exception is found to apply. Mathers does not cite this Court to, nor do we find, any applicable hearsay exception. Thus, Mathers' first assignment of error is overruled. *Page 10 
 III. {¶ 31} Mathers' assignments of error are overruled. The decision of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
DONNA J. CARR FOR THE COURT
 SLABY, J. DICKINSON, J. CONCUR *Page 1