[Cite as *State v. Witcher*, 2012-Ohio-4141.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26111 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS WITCHER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 05 1317 |

## DECISION AND JOURNAL ENTRY

Dated: September 12, 2012

MOORE, Judge.

{¶1}  Defendant-Appellant, Thomas Witcher, appeals from his sentence and conviction set forth in the October 13, 2011 journal entry of the Summit County Court of Common Pleas. For the following reasons, we affirm.

I.

{¶2}  On May 17, 2011, Mr. Witcher approached Daniel Michael Gardner, a high-school senior, at a BP gas station in Cuyahoga Falls.  He told Gardner that he was lost, his car was broken down at a nearby Circle K, and his father was in the hospital with Lou Gehrig's disease.  As a good deed, Gardner agreed to give Mr. Witcher a ride to the gas station in order to retrieve his car.  As they neared the intersection to the Circle K, Mr. Witcher brandished a gray metallic gun with a black handle by opening his jacket and showing Gardner the weapon. He told Gardner that he no longer wanted to go to the Circle K, but that he wanted, instead, to go to an Advance Auto Parts store.

{¶3} Upon arriving at the Advance Auto Parts store, Gardner explained that he only had twenty dollars left on his debit card because he used his cash to buy gas. At that point, Gardner claimed that he could still see the weapon. After realizing that Gardner only had twenty dollars, Mr. Witcher asked Gardner to take him to Pizza Hut. Then, after ordering food at Pizza Hut, he asked Gardner to take him to the Marathon for some beer and cigarettes. Gardner bought Mr. Witcher beer and cigarettes, and returned to Pizza Hut to pick up the food. After this sequence of events, Mr. Witcher asked Gardner to drop him off at Timbertops apartment complex. Upon arriving at Timbertops, Mr. Witcher shook Gardner's hand and got out of the car. Gardner then realized that his iPod was missing from the front passenger's seat of the car.

{¶4} That same night, Gardner contacted the police and reported the incident. While Gardner was at police headquarters, Mr. Witcher was brought in and admitted to "scamming" Gardner and being in his car. Additionally, the police discovered that Mr. Witcher had Gardner's missing iPod.

{¶5} Mr. Witcher was indicted for kidnapping, in violation of R.C. 2905.01(A)(2) and (A)(3), a felony of the second degree, and aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, both with firearm specifications pursuant to R.C. 2941.145. He pleaded not guilty to all charges and requested a jury trial.

{¶6} On July 26, 2011, a two day jury trial commenced wherein Gardner, Kaylee Nicholas, a Pizza Hut employee, and Officer Don Schismenos of the Akron Police Department testified on behalf of the State. Mr. Witcher did not present any witnesses to testify on his behalf.

{¶7} The jury found Mr. Witcher guilty of kidnapping and aggravated robbery, both with firearm specifications.

{¶8}   The trial court sentenced Mr. Witcher to three years of imprisonment for kidnapping, four years of imprisonment for aggravated robbery, and three years of mandatory imprisonment for the merged gun specifications, to run consecutively, for a total of ten years of imprisonment.

{¶9}   Mr. Witcher timely appealed, and set forth five assignments of error for our consideration.

II.

**ASSIGNMENT OF ERROR I**

[MR. WITCHER'S] CONVICTIONS [FOR] KIDNAPPING AND AGGRAVATED ROBBERY WITH FIREARM SPECIFICATIONS WERE CONTRARY TO THE MANIFEST W[EI]GHT OF THE EVIDENCE.

{¶10} In his first assignment of error, Mr. Witcher argues that his convictions are against the manifest weight of the evidence.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).   A weight of evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other.  *State v. Thompkins*, 78 Ohio St.3d 380,387 (1997).  Further,  "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."  *Id*.  Additionally, the court's "discretionary power to grant a new trial should be exercised only in exceptional cases in which the evidence weighs

heavily against the conviction." *Otten* at 340. *See also State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶11} In the present matter, Mr. Witcher specifically argues that the testimony contains internal contradictions and is not supported by the evidence. In support of this argument, he alleges that, although Gardner testified that he "saw something grey and metallic resting against [Mr. Witcher's] stomach while he was in the car giving [Mr. Witcher] a ride," the State offered insufficient evidence to allow a reasonable person to infer that he possessed, brandished, or used an operable firearm to facilitate the offenses.

{¶12} R.C. 2941.145(A) states, in relevant part, that:

> Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

Pursuant to R.C. 2941.145(D), firearm, as defined in R.C. 2923.11(B)(1), means, "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Further, "[i]n determining operability, the trier of fact 'may rely upon circumstantial evidence, including***the representations and actions of the individual exercising control over the firearm.'" *State v. Hayes*, 9th Dist. No. 22168, 2005-Ohio-1464, ¶ 19, quoting R.C. 2923.11(B)(2). "Accordingly, the trier of fact must evaluate the evidence of a firearm's operability by examining the totality of the circumstances." *Hayes* at ¶ 19, citing *State v. Murphy*, 49 Ohio St.3d 206, 208 (1990).

{¶13} At trial, Gardner testified regarding his belief that Mr. Witcher possessed an operable firearm:

Q. Okay. Now, getting back to that other question, you are in the car, your destination at this point, like you said, is the Circle K?

A. Correct.

* * *

Q. Okay. At that point you said that's on your way to your house, correct?

A. Correct.

Q. And it's not a very far drive?

A. No.

Q. As you approached the intersection where that Circle K is located on Portage Trail, take us through what happens.

A. As we approach the Circle K, he no longer wants to go to the Circle K, the car is no longer there and he needs to be taken to an Advance Auto Parts store where his car is at because it needs—it needs an automobile part to be fixed. So now it's at a different store.

Q. Okay. So the initial story that his car is broken down at Circle K has changed?

A. Correct.

Q. When does he tell you to divert your travels?

A. As we are at the Circle K. I was turning to the left to go to the Circle K. He now wanted to go right.

Q. Where was this? You said left. You mean in the intersection?

A. Yes.

Q. What happens in that intersection?

A. He opens himself up to me.

Q. Can you describe that for [the] jury?

A.  If you are sitting in a car seat, cross your legs, arm behind the car seat* * * with the jacket open and a hand, and I notice a weapon.  And [Mr. Witcher] demands to be taken to the Advance Auto Parts [store].

Q.  Okay.  You said you notice a weapon.  What did it look like?

A.  Two shades of gray metallic, black handle.

Q.  And where was that—it was a firearm, a gun?

A.  Yes.

Q.  Where was the gun pointed at?

A.  My side.

Q.  Your side.  How was he holding it?

A.  Casually, against his stomach.

* * *

Q.  Okay.  What's going through your mind now?

A.  Can't be much else that goes on.  I complied to everything.

Q.  When he pulls that gun on you, how are you feeling at that point?

A.  Sheer terror.

Q.  Did you feel threatened?

A.  Yes.

Q.  Did you think the gun was operable and worked?

A.  Yes.

Q.  How long did he have that gun pointed at you?

A.  Not more than five minutes.

Q.  Okay.  After he's pointing the firearm, the gun at your side, what do you do?

A.  Turn right, go to the store that he needs to go to.

Q.  So you are being compliant?

A.  Yes.

Q. Why are you being compliant?

A. Out of fear for my own safety.

* * *

Q. What happens after you explain to him your situation in terms of money?

A. He says well, you were going to give me 20 bucks anyways, you might as well get me something to eat.

Q. Okay. I mean, was this surprising to you when he asked to get something to eat?

A. Extremely confused.

Q. Okay. At this point where is the weapon?

A. Gone. Once we leave the parking lot it is gone.

Q. You mean he conceals it somewhere?

A. Yes.

Q. Do you see the firearm anymore at that point?

A. No.

Q. You comply by taking him to Pizza Hut, correct?

A. Correct.

Q. And why?

A. That's where he wanted to go. Why did I still comply?

Q. Yes, why are you still complying now?

A. I believe it's still there, the weapon.

{¶14} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The fact-finder "is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶15} Here, the jury clearly believed Gardner's testimony that, prior to turning into the Circle K, Mr. Witcher brandished a gun causing Gardner to comply with all of his demands: go to Advance Auto Parts store, then to Pizza Hut for food, then to Marathon for beer and cigarettes, and then to Timbertops apartment complex. It was reasonable for the jury to infer that, if Gardner believed Mr. Witcher possessed an operable firearm, he would follow his demands in order to remain safe. Additionally, Gardner specifically described the gun as "[t]wo shades of gray metallic, [with a] black handle," and testified that Witcher held the gun "[c]asually, against his stomach." Further, Gardner testified that Mr. Witcher pointed the gun at his side, and that when he pulled out the gun, Gardner felt "sheer terror," "threatened," and believed the gun was operable. Based upon Gardner's testimony and the totality of the circumstances, we cannot conclude that the jury's resolution of credibility, in favor of Gardner, was unreasonable.

{¶16} We note that, in his brief, Mr. Witcher has not set forth any *specific* arguments regarding his convictions for kidnapping and aggravated robbery as being against the manifest weight of the evidence. However, based upon the record before us, and specifically the testimony of Gardner and Officer Schismenos, we cannot say that the jury clearly lost its way in convicting Mr. Witcher for kidnapping and aggravated robbery, both with firearm specifications. Therefore, we conclude that his convictions are not against the manifest weight of the evidence.

{¶17} Accordingly, Mr. Witcher's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FAILING TO GRANT [MR. WITCHER'S] CRIMINAL RULE 29 MOTION TO DISMISS THE CHARGES FOLLOWING THE STATE'S CASE AND AT THE CONCLUSION OF THE CASE.

**{¶18}** In his second assignment of error, Mr. Witcher argues that his convictions for kidnapping and aggravated robbery, with firearm specifications, were not supported by sufficient evidence.

**{¶19}** Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *Thompkins*, 78 Ohio St.3d at 386. When considering a challenge to the sufficiency of the evidence:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See also Thompkins* at 386. "In essence, sufficiency is a test of adequacy." *Id*.

**{¶20}** Although Mr. Witcher captions his third assignment of error as a sufficiency challenge, he fails to set forth *any* argument regarding which elements of kidnapping and/or aggravated robbery, with gun specifications, the State allegedly has failed to prove beyond a reasonable doubt. It is well settled that Mr. Witcher, as the appellant, has the burden on appeal. *See* App.R. 16(A)(7); Loc.R. 7(B)(7). "It is not the function of this [C]ourt to construct a foundation for [Mr. Witcher's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996). Because Mr. Witcher has not developed an argument to support his sufficiency

challenge, we decline to conduct a sufficiency analysis. *See State v. Wilson*, 9th Dist. No. 25100, 2011-Ohio-4072, ¶ 21.

**{¶21}** Accordingly, Mr. Witcher's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN SENTENCING [MR. WITCHER] BY IMPOSING MORE THAN THE MINIMUM SENTENCE AND BY IMPOSING AN IMPROPER SENTENCE.

**{¶22}** In his third assignment of error, Mr. Witcher argues that the trial court imposed a sentence that was clearly and convincingly contrary to law by failing to consider R.C. 2929.11 and/or R.C. 2929.12 when imposing more than the minimum sentences for kidnapping and aggravated robbery. Additionally he argues that the trial court abused its discretion in imposing consecutive sentences that totaled ten years of imprisonment.

**{¶23}** We review a trial court's felony sentencing by applying a two-part test. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. In *Kalish* at ¶ 26, the Supreme Court of Ohio stated that "[f]irst, [an appellate court] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Second, "[i]f this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *Id.*

**{¶24}** Here, the trial court sentenced Mr. Witcher as follows:

(1) Three year mandatory term of imprisonment for possession of a firearm to Count I;

(2) Three year non-mandatory term of imprisonment for Count I, kidnapping, in violation of R.C. 2905.01(A)(2) and (A)(3), a felony of the second degree;

(3) Three year mandatory term of imprisonment for possession of a firearm to Count II; and

(4) Four year non-mandatory term of imprisonment for Count II, aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree.

The trial court merged the two firearm specifications, imposing a total of three years mandatory imprisonment to be served, prior to, and consecutively with, the sentence imposed in Count I. Further, the trial court ordered that the sentences imposed in Counts I and II run consecutively, for a total of ten years imprisonment. Additionally, the trial court ordered that the sentence in this case be served consecutively to the sentences in case numbers 10-11-3164, 11-03-0772, and 11-05-1280.

{¶25} In *Kalish* at ¶ 18, the Supreme Court of Ohio determined that a trial court's felony sentence is not clearly and convincingly contrary to law when (1) the trial court expressly states that it considered the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, (2) the sentence is within the permissible range, and (3) postrelease control is properly imposed.

{¶26} In the present matter, the trial court's journal entry expressly indicates that it "considered the record, oral statements, as well as the principles and purposes of sentencing under [R.C.] 2929.11, and the seriousness and recidivism factors under [R.C.] 2929.12." Further, the trial court's journal entry indicates that it sentenced Mr. Witcher within the permissible statutory range of three years for kidnapping, in violation of R.C. 2905.01(A)(2) and (A)(3), a felony of the second degree, and four years for aggravated robbery, in violation of 2911.01(A)(1), a felony of the first degree. Pursuant to R.C. 2929.14(A)(2) and (A)(1)

respectively, the sentencing range for a felony of the second degree is two to eight years, while the sentencing range for a felony of the first degree is three to eleven years.

{¶27} Finally, the trial court's journal entry properly imposes postrelease control. Therefore, pursuant to *Kalish*, we conclude that Mr. Witcher's sentence is not clearly and convincingly contrary to law.

{¶28} The trial court heard the testimony elicited at trial. The evidence included Gardner's testimony of having attempted to help a stranded motorist and being rewarded for his good deed with a robbery and kidnapping at gun point. Prior to issuing consecutive sentences, the trial court listened to mitigating statements from Mr. Witcher, his brother John, and his sister Diane. The State informed the trial court that Gardner was "shaken up" and wanted Mr. Witcher to do jail time for the offense. The trial court painstakingly went through Mr. Witcher's entire record dating back to 1981, for receiving stolen property, and spanning the course of thirty years. After reviewing Mr. Witcher's extensive record, the trial court stated:

> So yours is a tough situation. You've been raised in a church, which I certainly respect, and that's a really good thing. You got family members who support you despite this record and, obviously, express concern and love for you which most people standing in your shoes don't have.
>
> On the other hand, you know, it was probably 15 minutes of me just going over your record. Part of my job is to make sure that the community is safe and that there's some deterrence to this crime spree that you've gone over in your life.
>
> Does that mean 20-some years is appropriate? I just looked at your record and probably so. You've got a lot of good family here. You've been raised * * * in a church and maybe some of that may sink in some day.
>
> So yours is not the easiest case, but I'm going to do what I think is right.
>
> * * *

{¶29} Based upon the record before us, we believe that the trial court gave "careful and substantial deliberation to the relevant statutory considerations." *Kalish* at ¶ 20. As such, Mr.

Witcher's sentence was not unreasonable, arbitrary or unconscionable. *Id*. at ¶ 19. Therefore, we conclude that the trial court did not abuse its discretion in imposing a ten-year term of imprisonment.

{¶30} Accordingly, Mr. Witcher's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED [MR. WITCHER'S] MOTION FOR A MISTRIAL.

{¶31} In his fourth assignment of error, Mr. Witcher argues that the trial court erred in not granting his motion for a mistrial because, during Gardner's direct examination, the prosecutor flashed a picture of Mr. Witcher to the jury that had the word "Guilty" written on it in red letters. The record does not contain this particular image. Further, Mr. Witcher argues that during the trial court's curative instruction, it mistakenly told the jury that a defendant is "presumed guilty."

{¶32} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for a mistrial is whether the substantial rights of the accused are adversely affected." *State v. Wooden*, 9th Dist. No. 21138, 2003-Ohio-1917, ¶ 33, quoting *Wadsworth v. Damberger*, 9th Dist. No. 3024-M, 2000 WL 1226620, *2 (Aug. 30, 2000). "Due to the variety of circumstances in which mistrial may emerge, great deference must be given by a reviewing court to the trial court's discretion as the trial court judge is in the best position to assess the situation and determine whether a mistrial is appropriate." *Wooden* at ¶ 33, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). Further, "[a] trial court's ruling on a motion for mistrial will be reversed only for an abuse of discretion." *Wooden* at ¶ 33, citing *Damberger*, citing *State v. Stewart*, 111 Ohio App.3d 525, 533 (9th Dist.1996). "The term 'abuse of discretion' connotes*

* * that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *In re T.A.F.*, 9th Dist. No. 09CA0046-M, 2010-Ohio-3000, ¶ 11.

**{¶33}** Here, the record reflects that Mr. Witcher's attorney objected to the image being shown to the jury, stating:

* * *

Judge, I'm moving for a mistrial at this point. I believe, for lack of a better description, that a picture of my client was flashed across the screen by the prosecutor with the red words "Guilty" clearly visible in red, printed, if you will, across his forehead. I don't believe that's anything that the prosecutor's going to try to introduce as an exhibit or make any further reference to, but I think that being flashed up there with words by the State of Ohio certainly is grounds for mistrial. It can do nothing but prejudice the jury.

In response, the State contended:

That was a picture that was displayed during opening statements. [Mr. Witcher's attorney] did not object to that at that time.

During the direct examination of [Gardner] that was the last slide for the PowerPoint. That disk was taken out, however, the image remained. The jury has already seen that picture and that photo.

In terms of this writing that [Mr. Witcher's attorney] describes as the red words, "Guilty," I don't believe that prejudices the jury since it's already been seen during the opening statements when [Mr. Witcher's attorney] failed to object.

I would ask for a curative instruction. It's not evidence since it's already been given.

* * *

After allowing the parties' respective arguments, the trial court held:

* * *

You've made your motion. The Court's going to overrule the motion. The image was up for less than a second. It was just a flash. I'm not sure who saw it. It wasn't up for any length of time, less than a second. I'll give a curative instruction.

* * *

As its first curative instruction, the trial court stated:

All right. Ladies and gentlemen, while [the prosecutor] was inserting his DVD, I don't know if anybody had seen it, but there was a photograph of Mr. Witcher that was up on the screen for less than a second.

If any of you did see the photograph or the writing on it, that is not evidence and I want you to totally disregard that picture and any writing that was on that picture. You are not to consider it as evidence in the case.

* * *

Also, I want to further instruct you and remind you that in a criminal case a defendant, or the accused, is presumed guilty [verbatim] and the State's burden is to prove each and every element of every offense by proof beyond a reasonable doubt.

So for those of you who saw that image that was flashed up briefly, that was used during opening statement, again, it is not evidence, it is not to be considered as evidence in this case and you are instructed, those of you who did see it, to totally disregard it.

* * *

In order to clarify its previous statement, the trial court issued a second curative instruction:

* * *

All right. Ladies and gentlemen, before we continue with the cross-examination I want to make absolutely certain I was clear on the corrective instruction that I gave you. Because there was a picture of [Mr. Witcher] flashed inadvertently, for less than a second, by the State when he was switching exhibits, and I instructed you had to totally disregard that, it was not evidence.

Now, I want to make sure I stated this correctly because it's an important distinction. [Mr. Witcher] is presumed innocent. And there was some confusion as to whether or not that was stated properly.

I want to make sure you understand any defendant in a criminal case is presumed innocent. It's the State's burden to prove each and every element of every offense by proof beyond a reasonable doubt.

The reason this is important is because that picture that was inadvertently up on that screen for less than a second was the picture that [the prosecutor] used in his opening statement, which was [Mr. Witcher's] picture with the word "Guilty" on it.

So I want to make sure that you all understand clearly and I spoke correctly. I'm instructing you as a matter of law to disregard that photograph, disregard the statement on it. It is not evidence, it is not to be considered as evidence against you.

And, [Mr. Witcher], just like any defendant accused of a crime, comes into the courtroom and is presumed innocent. It is the State's burden to prove every single element of every offense he is accused of committing by proof beyond a reasonable doubt.

\* \* \*

Further, in its final instructions, the trial court admonished the jury as follows:

\* \* \*

Statements or answers that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you never heard them. This includes the photograph that was flashed up inadvertently for less than a second that I instructed you to disregard. You are not to consider that as evidence.

\* \* \*

It is well settled that juries are presumed to follow the trial court's instructions. *State v. Short*, 9th Dist. No. 1995, 1991 WL 208421, \*1 (Oct. 9, 1991), citing *State v. Dunkins*, 10 Ohio App. 3d 72, 73 (9th Dist. 1983). Here, the trial court stated three separate times that, if the jury, in fact, saw the photograph of Mr. Witcher, it was to disregard it and not consider it as evidence. Additionally, notwithstanding its previous misstatement, the trial court properly explained that Mr. Witcher, as all criminal defendants, is presumed innocent and that the State must prove each and every element of his alleged crimes beyond a reasonable doubt. Based upon the foregoing,

we defer to the trial court's determination that the momentary flashing of the photograph did not adversely affect Mr. Witcher's substantial rights to a fair trial. Therefore, because the trial court issued numerous curative instructions to the jury to disregard this photograph, we cannot say that the trial court abused its discretion in denying his motion for a mistrial.

{¶34} Accordingly, Mr. Witcher's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

WHETHER TRIAL COUNSEL'S REPRESENTATION WAS DEFICIENT AND EFFECTED THE OUTCOME OF THE CASE.

{¶35} In his fifth assignment of error, Mr. Witcher argues that he was denied the effective assistance of counsel when his trial counsel failed to object, during the prosecutor's opening statement, to a picture of Mr. Witcher that was flashed to the jury with the word "Guilty" written in red letters.

{¶36} "The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel." *State v. Chisolm*, 9th Dist. No. 05CA008782, 2006-Ohio-5051, ¶ 12, citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In addressing this issue on appeal, courts employ the following two-prong test to determine whether the right to effective assistance of counsel has been violated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy." *Chisolm* at ¶ 12, citing *State v. Smith*, 17 Ohio

St.3d 98, 100 (1985). "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." *State v. DeNardis*, 9th Dist. No. 2245, 1993 WL 548761 (Dec. 29, 1993), *2, citing *Strickland*, 466 U.S. at 690. Finally, in order to demonstrate prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶37} As stated above, during his opening statement, the prosecutor flashed a picture of Mr. Witcher in front of the jury with the word "Guilty" written in red letters and his attorney did not object. First, "'this Court has consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel".'" *State v. Guenther*, 9th Dist. No. 05CA008663, 2006-Ohio-767, ¶ 74, quoting *State v. Bradford*, 9th Dist. No. 22441, 2005-Ohio-5804, ¶ 27, quoting *State v. Taylor*, 9th Dist. No. 01CA007945, 2002-Ohio-6992, ¶ 76.

{¶38} Because the picture of Mr. Witcher flashed up on the screen momentarily during opening statements, Mr. Witcher's attorney may not have been aware of the first showing of the picture. However, assuming that Mr. Witcher's attorney *was* aware of the first showing of the picture, Mr. Witcher has not directed us to any evidence in the record illustrating that his attorney's failure to object was anything other than a tactical decision. For example, Mr. Witcher's attorney may have chosen not to object because he believed that the jury did not notice the picture. By raising an objection, defense counsel may have concluded that objecting to the "Guilty" reference would bring greater attention to it. Second, even if Mr. Witcher's attorney's

failure to object was not due to trial strategy, Mr. Witcher has failed to demonstrate any prejudice. In its instructions to the jury, the trial court specifically stated:

> Now, the evidence does not include * * * the opening statements or the closing arguments of counsel.

> Again, ladies and gentlemen, the opening statements and the closing arguments of counsel are designed to assist you. They are not evidence.

As indicated above, the trial court also gave two curative instructions to the jury regarding this issue. Again, juries are presumed to obey the trial court's instructions. *See Short* at *1, citing *Dunkins* at 73. Based upon the record, we have no reason to believe that this jury disregarded the trial court's limiting instructions that opening statements are not to be considered evidence, or the trial court's curative instruction ordering the jury to disregard the photograph and the statement on it. Therefore, Mr. Witcher has not proven that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *See Bradley* at paragraph three of syllabus.

**{¶39}** Accordingly, Mr. Witcher's fifth assignment of error is overruled.

III.

**{¶40}** In overruling Mr. Witcher's five assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶41} I concur in the judgment and most of the majority's opinion. While I agree that Mr. Witcher's lawyer's failure to object to the photograph shown during the prosecutor's opening statement in this case may have been a strategic decision and, therefore, not ineffective assistance of counsel, I do not concur in the implication that a defense lawyer's failure to object can never constitute ineffective assistance of counsel. I also do not concur in the statement that "Mr. Witcher's attorney may not have been aware of the first showing of the picture." If Mr. Witcher's lawyer was not paying close enough attention to the prosecutor's opening statement to notice the use of his client's photograph with the word guilty stamped across his forehead, that lack of attention would satisfy the first prong of the *Strickland* test. There is no indication in the

record, however, that Mr. Witcher's lawyer was not aware of that first showing of the photograph.

APPEARANCES:

LEONARD J. BREIDING, II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.