[Cite as *State v. Wilk*, 2023-Ohio-112.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. No.    22CA0008-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN E. WILK, JR. | | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No.    21CRB000597 |

DECISION AND JOURNAL ENTRY

Dated: January 17, 2023

TEODOSIO, Presiding Judge.

{¶1}    Appellant, Brian E. Wilk Jr., appeals from his conviction for aggravated menacing in the Medina Municipal Court.  This Court affirms.

I.

{¶2}    A group of teenage girls parked two cars on the street in front of Mr. Wilk's house. Mr. Wilk immediately came outside and yelled to the girls that they cannot park there and that they need to move their cars.  A verbal dispute ensued between Mr. Wilk and one of the girls ("M.M."), and Mr. Wilk soon retrieved an Airsoft BB gun and holster from inside of his home.  It was disputed whether Mr. Wilk pointed the gun at the girl, pointed it up in the air, waved it around, or kept it holstered.  After the mother of one of the girls also confronted Mr. Wilk, the police were called and Mr. Wilk was charged with aggravated menacing, a misdemeanor of the first degree. He was convicted following a jury trial, and the trial court sentenced him to 180 days in jail and fined him $500.00.  The court suspended the fine and all court costs.

**{¶3}** Mr. Wilk now appeals from his conviction and raises two assignments of error for this Court's review.

## II.

**{¶4}** As a preliminary matter, although not raised by the parties, we are compelled to sua sponte first address whether this appeal is moot because Mr. Wilk has completed his jail sentence. *See Macedonia v. Burns*, 9th Dist. Summit No. 20404, 2001 WL 542332, *4 (May 23, 2001) (Carr, J., dissenting), citing *State v. Berndt*, 29 Ohio St.3d 3, 4-5 (1987). "As a general rule, courts will not resolve issues which are moot." *Boncek v. Stewart*, 9th Dist. Summit No. 21054, 2002-Ohio-5778, ¶ 10. *See also Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, ¶ 18 ("[I]t is reversible error for an appellate court to consider the merits of an appeal that has become moot after the defendant has voluntarily satisfied the sentence * * *."). "A case is moot if it involves 'no actual genuine controversy which can definitely affect the parties' existing legal relationship.'" *State v. Ross*, 9th Dist. Lorain No. 18CA011284, 2019-Ohio-323, ¶ 6, quoting *Harris v. Akron*, 9th Dist. Summit No. 24499, 2009-Ohio-3865, ¶ 7.

**{¶5}** The Supreme Court of Ohio has held:

> Where a defendant, convicted of a criminal [misdemeanor] offense, has *voluntarily* paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.

(Emphasis added.) *State v. Wilson*, 41 Ohio St.2d 236 (1975), syllabus. *See also Berndt* at 4; *State v. Golston*, 71 Ohio St.3d 224, 227 (1994) ("[T]he test for mootness outlined in *Wilson* and *Berndt* applies only to appeals from misdemeanor convictions."). This Court has likewise held:

> [W]hen an appellant completes a misdemeanor sentence *without requesting a stay pending appeal* and does not offer evidence from which this Court could infer that the appellant would suffer collateral disability or loss of civil rights stemming from the misdemeanor conviction, the appeal is moot.

(Emphasis added.) *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 7.

{¶6} Mr. Wilk conceded at oral argument that he has since completed his jail sentence in this matter. The record reveals that the trial court suspended the $500.00 fine and all court costs at sentencing. The record is also clear that Mr. Wilk sought a stay of execution of the sentence in the trial court, although his motion was denied. He did not thereafter seek a stay of execution of the sentence in this Court. Nevertheless, the Supreme Court has determined that circumstances similar to these have been sufficient to avoid an appeal becoming moot, as the sentence was not served voluntarily. *See Lewis* at ¶ 3. In *Lewis*, the high court found "strong evidence of intent to challenge the criminal charge" when the appellant was convicted of a misdemeanor at trial, unsuccessfully sought a stay of execution of the sentence in the trial court, did *not* seek a stay in the appellate court, paid his fines and court costs, filed a notice of appeal, and his term of inactive probation had expired, demonstrating that he "neither acquiesced in the judgment nor abandoned his right to appeal and thus did not *voluntarily* complete the sentence pending appeal." (Emphasis added.) *Id.* These circumstances also demonstrated that the appellant had "'a substantial stake in the judgment of conviction,'" so that there was "'subject matter for the court to decide.'" *Id.* at ¶ 23, quoting *Wilson* at 237 and *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, ¶ 9. When an appellant's assignment of error relates to his finding of guilt, an appellate court may provide redress of the claim that the appellant has been wrongfully convicted, notwithstanding completion of his sentence. *Id.* at ¶ 24. Although Mr. Wilk did not seek a stay of execution of the sentence in this Court pursuant to App.R. 8, we note that the Supreme Court "[has] never explicitly required that a misdemeanor appellant must request a stay in the court of appeals to prevent a sentence from taking effect before an appeal may be considered." *Id.* at ¶ 36 (Lanzinger, J., concurring in judgment only).

**{¶7}** We conclude that, under the particular circumstances of this case, because Mr. Wilk did not serve his sentence voluntarily and his appeal challenges his conviction (not merely his sentence), his appeal is not moot. We now turn to address the merits of his appeal.

## ASSIGNMENT OF ERROR ONE

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT OF GUILTY.

**{¶8}** In his first assignment of error, Mr. Wilk argues that his conviction was not based on sufficient evidence. We disagree.

**{¶9}** Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy. *In re R.H.*, 9th Dist. Summit, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit, 2017-Ohio-73, ¶ 10.

**{¶10}** Mr. Wilk was convicted of aggravated menacing under R.C. 2903.21(A), which states, in relevant part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Serious physical harm to persons includes any physical harm that carries a substantial risk of death; involves permanent incapacity or disfigurement or temporary substantial incapacity or disfigurement; or

that involves 'acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.'" *State v. Robinson*, 9th Dist. Summit No. 29689, 2021-Ohio-1053, ¶ 22, quoting *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 21, quoting R.C. 2901.01(A)(5).

{¶11}  The State presented testimony from several teenage girls who left a Memorial Day party at their friend's house to go to one of the girl's ("D.C.'s") house to gather items to make s'mores.  The kids parked their two cars in the street in front of D.C.'s house.  One of the girls ("M.M.") testified that Mr. Wilk was at his own house across the street and came outside yelling for another girl ("E.S.") to move her car, so M.M. walked over to the sidewalk in front of Mr. Wilk's house and asked him why.  She testified that Mr. Wilk came out onto his porch, cursed at her, withdrew a gun from a side holster, and pointed it at her.  She testified that she asked him, "Do you have a gun?" and he replied, "Yes."  She testified that she was scared, did not realize at the time that it was only a BB gun, and went to D.C.'s house to call the police.  She claimed she "never really experienced anything as scary as that in [her] life" and "was scared he was going to shoot [her] and kill [her] because he was pointing it straight at [her] face."  E.S. testified that Mr. Wilk's demeanor was "[p]retty aggressive and scary" as he was yelling.  She also testified that once she saw Mr. Wilk holding a gun on his porch, she was scared and ran to D.C.'s house.  D.C. testified that Mr. Wilk "pulled a gun on [M.M.,]" "pointed it towards her[,] and then waved it around in the air * * *[,]" so she ran back into her house scared.  She characterized the incident as "traumatizing" to her.

{¶12}  Officer Mike Lyon testified that he was on duty and responded that day to a 9-1-1 call regarding a man threatening people with a gun.  He spoke to Mr. Wilk at the scene, who admitted that a verbal dispute over parked cars had occurred.  Mr. Wilk told the officer that he

went back inside his house, retrieved his BB gun and holster, and came back outside while holding the gun and trying to thread the holster onto his belt at the same time. Mr. Wilk claimed that once the holster was secured, he holstered his BB gun inside of it. The officer testified that Mr. Wilk denied pointing the gun at anyone's face, but instead claimed that he only pointed it up in the air. The officer further testified that, from a distance, the naked eye would not be able to distinguish Mr. Wilk's BB gun from a real gun. The officer testified: "[I]f I saw this [gun], I would suspect this to be the real thing * * *." He also testified that BB's fired out of Mr. Wilk's gun could cause serious physical harm if they struck someone in a "soft" area such as the eye.

{¶13} Security footage from inside of Mr. Wilk's home was also introduced at trial. Mr. Wilk can be seen and heard in the video footage yelling and arguing with someone outside about moving parked cars while he goes in and out of his home. At one point, he retreats into his bedroom and then emerges holding a black gun. He clearly brandishes the gun and briefly points it toward someone outside while walking toward the front door and yelling, "Think I'm f***in' playin'? Move the car. Move the f***in' car."

{¶14} When viewing the evidence in a light most favorable to the prosecution, a rational jury could have concluded that the State proved each element of aggravated menacing beyond a reasonable doubt. *See Jenks* at 273. The evidence showed that Mr. Wilk knowingly caused M.M. to believe he would cause her serious physical harm, as he pointed a BB gun at her during a verbal dispute, the BB gun was indistinguishable from an actual firearm, M.M. believed the gun to be a real firearm, and M.M. feared being shot and killed by Mr. Wilk. *See* R.C. 2903.21(A). The evidence also showed that M.M. even asked Mr. Wilk if he had a gun, and Mr. Wilk said yes.

{¶15} While Mr. Wilk sets forth a general sufficiency of the evidence challenge in his merit brief and recounts some of the testimony offered at trial, he fails to make any specific

argument as to why his conviction for aggravated menacing is not supported by sufficient evidence. *See State v. Burnette*, 9th Dist. Wayne No. 20AP0036, 2022-Ohio-1103, ¶ 9; *State v. Flowers*, 9th Dist. Lorain No. 12CA010295, 2014-Ohio-3087, ¶ 13; *State v. Witcher*, 9th Dist. Summit No. 26111, 2012-Ohio-4141, ¶ 20; App.R. 16(A)(7); Loc.R. 16(A)(7). He does not articulate why the evidence adduced at trial was insufficient, *see State v. Tipler*, 9th Dist. Summit No. 19344, 2000 WL 202111, *3 (Feb. 16, 2000), nor does he set forth the elements of aggravated menacing and argue which of those elements was not proven beyond a reasonable doubt. *See Witcher* at ¶ 20. It is not the function of this Court to construct a foundation for Mr. Wilk's claims, and failure to comply with the appellate rules is a tactic which is ordinarily fatal. *See id.*, citing *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996). Accordingly, absent any further argument on Mr. Wilk's part, this Court declines to engage in a more exhaustive review of his conviction. *See Burnette* at ¶ 9, citing App.R. 16(A)(7) and *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

**{¶16}** Mr. Wilk's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶17}** In his second assignment of error, Mr. Wilk argues that his conviction was against the manifest weight of the evidence. We disagree.

**{¶18}** A challenge to the manifest weight of the evidence concerns the State's burden of persuasion. *State v. Klafczynski*, 9th Dist. Medina No. 18CA0084-M, 2020-Ohio-3221, 2020 WL 3046444, ¶ 7. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine

whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶19} Apart from the evidence introduced by the State, three witnesses were called to testify on Mr. Wilk's behalf. Mr. Wilk's roommate and younger brother were both called as witnesses, but neither one testified as to observing whether Mr. Wilk pointed the BB gun at anyone while outside. The roommate was downstairs for most of the incident. While Mr. Wilk's brother initially testified that the BB gun remained in Mr. Wilk's holster, he later admitted on cross-examination that his written statement to the police states that Mr. Wilk took the gun out of the holster, held it up, and showed it, before putting it back in the holster.

{¶20} Mr. Wilk testified on his own behalf at trial. He testified that five or six very aggressive and angry females were all coming onto his property while yelling and screaming at him during the argument over parking, and he was concerned for his safety and for his property. He testified that he felt "threatened" and "felt like they were going to try to come up in there and try to beat [his] ass." He testified that he went back into his house to retrieve the BB gun in hopes of ending the situation and avoiding a fight. He testified that he did not want to scare or hurt anybody and just wanted them all to leave, but he also wanted them to know that he was capable

of defending himself. He maintained that he kept the gun in its holster and that he never pointed it at M.M. or up in the air.

{¶21} Upon review, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Wilk guilty of aggravated menacing. *See Otten* at 340. Mr. Wilk provides the general standard of review for challenging the manifest weight of the evidence and provides a word-for-word recitation of the testimony he recounted under his first assignment of error, but he does not challenge any specific testimony or evidence introduced at trial as lacking in credibility. *See Burnette* at ¶ 14, citing App.R. 16(A)(7). He has also not argued that the jury lost its way in rejecting his claim of self-defense, but only speculates that the jury "substituted opinion and speculation for factual evidence" in finding him guilty. *See id.* The jury was presented with conflicting testimony from Mr. Wilk and several of the girls as to whether he pointed his gun at M.M. while on the porch. Mr. Wilk denied pointing his gun at anyone and claimed it stayed holstered, but one girl claimed she saw him holding the gun and two others claimed he pointed the gun at one of them. Mr. Wilk's brother and roommate both testified on his behalf, but both remained indoors during the incident, and neither one could observe whether Mr. Wilk pointed the gun at M.M. while outside. To the extent there were any differences or conflicts in the testimony regarding each witness's recollection of whether Mr. Wilk pointed the gun directly at M.M., waved it around, pointed it up in the air, or kept it holstered, "the jury was in the best position to assess the credibility of the testifying witnesses." *Id.* at ¶ 14. Finally, Mr. Wilk has not shown that this is the exceptional case where the evidence weighs heavily against his convictions. *See Otten* at 340.

{¶22} Mr. Wilk's second assignment of error is overruled.

III.

**{¶23}** Mr. Wilk's assignments of error are both overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

―――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

ERIC HALL, Attorney at Law, for Appellant.

ROBERT B. CAMPBELL and MEGAN A. PHILBIN, Assistant Prosecuting Attorney, for Appellee.