[Cite as *State v. Wilson*, 2011-Ohio-4072.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25100 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRY LEE WILSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 08 08 2815 (A) |

## DECISION AND JOURNAL ENTRY

Dated: August 17, 2011

BELFANCE, Presiding Judge.

{¶1} Terry Wilson appeals his convictions from the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Wilson was indicted on multiple counts of drug trafficking, drug possession, aggravated murder, and aggravated robbery, as well as several underlying firearm specifications. A jury convicted him of aggravated murder, aggravated robbery, having a weapon under disability, trafficking heroin, possession of heroin, possession of cocaine (two counts), and two firearm specifications.

{¶3} Kelly Graham lived across the hall from Mr. Wilson. After she moved in, Mr. Wilson got her to start using heroin, and she eventually began to sell heroin for him in order to pay for her habit. However, Mr. Wilson did not allow her to sell drugs to men out of fear they would rob her. One of Ms. Graham's customers was Jason Reid, whom she had met through a

friend. Initially, because of the no-men rule, the mutual friend would purchase all of Mr. Reid's drugs. However, after Ms. Graham got to know Mr. Reid, she began to sell to him directly, even going so far as to give him drugs on credit.

{¶4}    On August 19, 2008, Mr. Reid came to Ms. Graham's apartment building unannounced. She let him into the building, and he followed her to her apartment. After they had entered the apartment, Mr. Reid attacked Ms. Graham and, after a struggle, knocked her unconscious.

{¶5}    When Ms. Graham awoke, she discovered that Mr. Reid had taken money, including the money in her purse, and most of the drugs she kept in the apartment. She went to get Mr. Wilson, who got very upset with her, saying, "How the hell are you going to let him walk away with my[] – []walk out with my drugs?" Mr. Wilson retrieved his gun and went looking for Mr. Reid. He returned approximately thirty minutes later, having been unable to locate him.

{¶6}    Later that night, Ms. Graham received a phone call from David Zander, Mr. Reid's coworker and roommate. Mr. Zander often accompanied Mr. Reid when he bought drugs from Ms. Graham. Mr. Zander was angry at Mr. Reid because Mr. Reid had stolen from him earlier that day. Ms. Graham gave the phone to Mr. Wilson, and he and Mr. Zander discussed Mr. Reid's whereabouts. Mr. Zander knew where Mr. Reid was and offered to tell Mr. Wilson in exchange for two bags of heroin. Mr. Wilson agreed to the deal, and Mr. Zander revealed that Mr. Reid was at the Knotty Pine, a bar located several miles from Mr. Wilson's apartment.

{¶7}    Mr. Zander came to the apartment, and he and Mr. Wilson discussed their plan to get Mr. Reid. Mr. Wilson called his friend James Ware, asking him to come along when they went to the Knotty Pine looking for Mr. Reid. Mr. Ware and his friend Josh Fitzgerald joined

Mr. Wilson, Mr. Zander, and Ms. Graham at the apartment. The men decided that Mr. Zander would go into the Knotty Pine and lure Mr. Reid out to the other men. They then went to the bar, leaving Ms. Graham to listen to police scanners for any sign that they were in trouble. When the men returned to the apartment, Mr. Wilson showed Ms. Graham that his gun had jammed and indicated that "God had saved [Mr. Reid's] life[.]" Mr. Wilson handed out drugs to each of the men, and they left.

{¶8} Mr. Wilson then recounted to Ms. Graham what had happened at the Knotty Pine. When the men had arrived at the bar, Mr. Zander went inside to get Mr. Reid as planned. Mr. Reid walked out first with Mr. Zander close behind him. Mr. Reid saw Mr. Ware to his right, looked to his left to discover Mr. Wilson, and took off running. Mr. Wilson and Mr. Ware gave chase.

{¶9} Mr. Wilson fired two shots at Mr. Reid. The first shot missed him. The second bullet struck him in the back, and Mr. Reid fell to the ground. When Mr. Wilson walked over to him, Mr. Reid groaned that he was dying. Mr. Wilson put his foot on Mr. Reid's head and told him, "Then die[.]" He tried to shoot Mr. Reid again, but the gun misfired. Mr. Wilson told Ms. Graham that he started to walk away and that Mr. Ware decided to go through Mr. Reid's pockets but only found twelve dollars. The two men returned to the car where Mr. Fitzgerald was waiting and drove back to Mr. Wilson's apartment.

{¶10} Daniel Herold arrived for work the morning after the shooting and saw Mr. Reid's body behind the store. However, because the Knotty Pine was nearby, he assumed that someone had simply passed out drunk. He proceeded to open his store and, after a few minutes, went out to check on the man. When he realized that Mr. Reid was not breathing, he went back into the store and called the police.

{¶11} Officer Laura Hendricks of the Barberton Police Department was the first police officer to arrive on the scene. She determined that Mr. Reid was dead and proceeded to secure and photograph the scene. She observed that Mr. Reid's shoes were off and that the pockets on his pants were turned inside out.

{¶12} Mr. Wilson appeals his convictions for aggravated murder and aggravated robbery and raises two assignments of error. We have rearranged his assignments of error for ease of discussion.

II.

**ASSIGNMENT OF ERROR II**

"APPELLANT'S CONVICTIONS FOR AGGRAVATED MURDER AND AGGRAVATED ROBBERY WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER [OF] LAW[ ] AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶13} Mr. Wilson argues that the State failed to produce sufficient evidence to demonstrate that he robbed, or attempted to rob, Mr. Reid. He also argues that the evidence demonstrated that he shot Mr. Reid and used the gun prior to any robbery, and, thus, the State had failed to produce sufficient evidence to support a finding that he used the gun or killed Mr. Reid while he, or an accomplice, was committing a robbery, required elements of his convictions for aggravated robbery and aggravated murder.

{¶14} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. No. 24731, 2009–Ohio–6955, at ¶18, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State*

*v. Jenks* (1991), 61 Ohio St.3d 259, 273. The State's evidence is sufficient if "any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶15} A jury convicted Mr. Wilson of violating R.C. 2903.01(B) by committing aggravated murder and of violating R.C. 2911.01(A) by committing aggravated robbery. R.C. 2903.01(B) provides that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery[ or] robbery[.]" R.C. 2911.01(A)(1) provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶16} Mr. Wilson does not dispute that the prosecution produced sufficient evidence to support a finding that he shot and killed Mr. Reid. In his brief, he concedes that the evidence presented indicated that he and Mr. Ware chased Mr. Reid from the Knotty Pine and that he shot Mr. Reid in the back. Instead, he contends that the State failed to produce sufficient evidence to sustain a finding that he killed Mr. Reid during a robbery or a finding that he used or brandished the gun during a robbery. We disagree because Mr. Wilson's argument is founded upon two incorrect premises: (1) that the jury was required to accept only Ms. Graham's version of events; and (2) in reliance upon her testimony, Mr. Wilson did not intend to rob Mr. Reid at the time he shot him.

{¶17} The State's witness, Mr. Fitzgerald, testified that he saw Mr. Wilson and Mr. Ware chase a man into the alley where Mr. Reid's body was found and that he heard two gun

shots. Mr. Reid was found dead with a gunshot wound. His pockets were turned inside out and his shoes were taken off his body. Some drugs were found in Mr. Reid's pockets. Gunpowder residue was found on Mr. Wilson.

{¶18} The State presented the testimony of Dr. Dorothy Dean who performed the autopsy of Mr. Reid. She testified that Mr. Reid was killed by a bullet that entered through his back, severing his spine, and went through his aorta and his esophagus. She also testified that the death was a homicide.

{¶19} Viewing the evidence in a light most favorable to the State, we conclude that the State presented sufficient evidence from which a reasonable person could conclude that Mr. Wilson caused Mr. Reid's death while committing aggravated robbery. A jury could have found that, at the time he shot Mr. Reid, Mr. Wilson not only sought to harm Mr. Reid, but also to rob him. Mr. Reid was found shot to death and left with his pockets turned out and shoes off, thus providing circumstantial evidence of a robbery or attempted robbery. Gun residue was found on Mr. Wilson and the firearm was retrieved from his home. Although Ms. Graham testified about what Mr. Wilson told her about the events that night, the jury was not required to accept all of her testimony as true, particularly the timing of and sequence of the crime. Accordingly, Mr. Wilson's argument is not well taken.

{¶20} Mr. Wilson also alleges in his second assignment of error that his convictions for aggravated murder and aggravated robbery are against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins*, 78 Ohio St.3d at 386. While sufficiency is a test of whether the evidence presented is adequate to sustain a verdict as a matter of law, weight of the evidence "concerns the inclination of the *greater amount of credible evidence*,

offered in a trial, to support one side of the issue rather than the other." (Internal citations and quotations omitted.) (Emphasis sic.) Id. at 386-87.

{¶21} Mr. Wilson argues that there was insufficient evidence to establish complicity, that there was no evidence that he killed Mr. Reid while committing or attempting a theft offense, and that there was no evidence that he acted as the principal in the robbery. These arguments attack the sufficiency of the evidence, not the manifest weight, and, as discussed above, there was sufficient evidence for a reasonable jury to convict Mr. Wilson of aggravated murder and aggravated robbery. He does not make any argument concerning the credibility of the evidence presented or the weight of the credible evidence. As he has not developed a manifest weight argument, we decline to address this alleged error. See App.R. 12(A)(2) and 16(A)(7).

{¶22} There was sufficient evidence for a reasonable jury to convict Mr. Wilson of aggravated murder and aggravated robbery. His second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND/OR COMMITTED PLAIN ERROR IN A) GIVING A JURY INSTRUCTION ON COMPLICITY WHEN THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH ANY COMPLICITY BY APPELLANT IN THE ROBBERY; AND B) ERRED AS A MATTER OF LAW IN INSTRUCTING THE JURY THAT COMPLICITY COULD BE INFERRED BY CONDUCT AFTER THE CRIME WAS COMMITTED."

{¶23} At trial, Mr. Wilson objected to the trial court giving an instruction on complicity. He argues that the evidence at his trial shows that he was a "passive bystander" when Mr. Ware robbed Mr. Reid. According to Mr. Wilson, because the evidence presented indicated that he went to the Knotty Pine with the intent to harm Mr. Reid and not to rob him, he did not share in Mr. Ware's purpose and, therefore, there was insufficient evidence to support a finding of

complicity in the robbery. Thus, Mr. Wilson argues, the trial court committed error when it instructed the jury on complicity.

{¶24} A trial court's jury instructions must be correct and complete statements of the law. *State v. Franklin*, 9th Dist. No. 22771, 2006-Ohio-4569, at ¶9, citing *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12.

> "[A]n appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." *State v. Horne*, 9th Dist. No. 24672, 2010-Ohio-350, at ¶19, quoting *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410.

We review the trial court's decision to instruct the jury on complicity for an abuse of discretion. See *Horne* at ¶20. The phrase "abuse of discretion" implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶25} The Ohio Supreme Court has held that:

> "a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is stated in terms of the principal offense and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." (Quotations and alterations omitted.) *State v. Herring* (2002), 94 Ohio St.3d 246, 251.

{¶26} Essentially, Mr. Wilson argues there was "no evidence" that he was the principal actor in the robbery or assisted Mr. Ware in robbing Mr. Reid. Thus, his argument is predicated in part upon the notion that there was insufficient evidence from which to conclude that Mr. Wilson was the principal offender. Although we disagree with the contention that there was insufficient evidence to permit a complicity instruction, as discussed above, the State presented

sufficient evidence to sustain Mr. Wilson's convictions for aggravated murder and robbery, and, the trial court's judgment entry indicates that Mr. Wilson was convicted of the principal offenses, not complicity. Thus, even if the trial court did commit error by instructing the jury on complicity, such error would not constitute reversible error because it did not prejudicially affect Mr. Wilson's substantial rights. Cf. *Horne* at ¶¶19-22 (concluding that, because the trial court's judgment entry indicated that the defendant was convicted of the principal offense, not complicity, and because that conviction was not against the manifest weight of the evidence, any error instructing the jury on complicity was harmless).

{¶27} Mr. Wilson also argues that the trial court committed plain error by instructing the jury that complicity could be inferred from conduct after the crime is committed. Generally, to establish plain error,

> "'there must [first] be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights[ ]" [to the extent that it] * * * affected the outcome of the trial.'" *State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, at ¶9, quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27.

"[E]ven if the defendant satisfies this burden, the appellate court has discretion to disregard the error and should correct it only to prevent a manifest miscarriage of justice." (Internal quotations and citation omitted.) *State v. Wamsley*, 117 Ohio St.3d 388, 2008–Ohio–1195, at ¶27.

{¶28} While Mr. Wilson has not pointed to any specific language in the jury instructions, see App.R. 16(A)(7), he is, presumably, referring to the trial court's instruction that "[t]he criminal intent of an aider and abettor may be inferred from presence, companionship, and conduct before, during, and after the crime is committed." However, this instruction tracks the Ohio Supreme Court's determination that "'[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v.*

*Johnson* (2001), 93 Ohio St.3d 240, 245, quoting *State v. Pruett* (1971), 28 Ohio App.2d 29, 34. As the trial court's jury instruction correctly reflected the law, there was no error, and, thus, no plain error. See *Hardges* at ¶9.

{¶29} Mr. Wilson's first assignment of error is overruled.

III.

{¶30} Mr. Wilson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
<u>CONCUR</u>

<u>APPEARANCES</u>:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.