[Cite as *State v. Lynch*, 2014-Ohio-968.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 13CA010357 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES LYNCH | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 10CR080715 |

DECISION AND JOURNAL ENTRY

Dated: March 17, 2014

MOORE, Presiding Judge.

{¶1}   Defendant, Charles Lynch, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   On June 10, 2010, the Lorain County Grand Jury indicted Mr. Lynch on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A).  This charge stemmed from allegations made against Mr. Lynch by his girlfriend's younger sister, C.L.  At his arraignment, Mr. Lynch pleaded not guilty, and he waived his right to a jury trial.  The case proceeded to a bench trial, and the trial court found Mr. Lynch guilty of the sole count of the indictment.

{¶3}   In a sentencing entry issued on January 14, 2013, the trial court sentenced Mr. Lynch to three years of community control, with the first 120 days of community control to be

served in jail, and classified Mr. Lynch as a tier II sexual offender. Mr. Lynch timely appealed from the sentencing entry, and he now presents one assignment of error for our review.

## II.

### ASSIGNMENT OF ERROR

> THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF [MR.] LYNCH'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶4}  In his sole assignment of error, Mr. Lynch argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶5}  When a defendant asserts that his conviction is against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶6}  Here, Mr. Lynch was charged with unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which provides:

> No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

**{¶7}** As part of the State's case-in-chief, the State produced the testimony C.L. and her mother. C.L. testified that her birthday is August 30, 1993, and her mother and father informally adopted C.L. from her biological mother when C.L. was two years old. C.L.'s adoptive mother and father are divorced, and C.L. lives with her mother. Her sister, who is eleven years older than she, resides with their father, and takes care of him due to his medical issues. In 2008, C.L. and her sister met Mr. Lynch at a hospital when C.L.'s father and Mr. Lynch's mother were both receiving medical care. They spoke in the lobby, and Mr. Lynch asked C.L. and her sister how old they were, and they told him. Mr. Lynch informed them that he was thirty.

**{¶8}** C.L. further testified that, after they met Mr. Lynch, he began dating C.L.'s sister, and he moved in with C.L.'s sister and her father. In the early morning hours of July 5, 2009, C.L., who was then fifteen, was spending the night at her sister's home, which she often did. C.L.'s sister went upstairs to her first floor bedroom to sleep at about midnight, and C.L. stayed up in the basement playing video games with Mr. Lynch. C.L.'s father primarily stayed in his first floor bedroom due to his medical issues. While Mr. Lynch and C.L. were in the basement, Mr. Lynch paused the game, and began stroking C.L.'s thigh and kissing her, and he touched her breast overtop of her tank top and bra. They then went upstairs to a room used as an office on the second floor. They continued kissing in that room, and Mr. Lynch stroked C.L.'s thighs under her shorts. He then removed her shorts and underwear, and he digitally penetrated her vagina. After that, he walked her to her bedroom on the second floor and tucked her in. C.L. said she was attracted to Mr. Lynch, and she was excited that he was sexually interested in her, but she was uncomfortable about the situation because he was dating her sister.

**{¶9}** The next weekend, C.L. maintained that she again spent the night at her sister's home. After C.L.'s sister went to bed, Mr. Lynch and C.L. stayed up in the basement. They

began to kiss, and Mr. Lynch asked C.L. if she wanted to give him oral sex. She performed oral sex on him. Afterward, Mr. Lynch asked if she had ever had anal sex. She said she had not, and Mr. Lynch asked if she wanted to try to have anal sex. She agreed. Mr. Lynch removed her shorts and positioned her on the couch. He then penetrated her anus with his penis, which she said was uncomfortable and hurt. He later ejaculated into a shirt.

{¶10} After these instances, C.L. stated that she and Mr. Lynch continued to engage in sexual conduct; however, they did not engage in vaginal intercourse until C.L. turned sixteen because Mr. Lynch had informed C.L. that it was illegal for him to have vaginal intercourse with her prior to her sixteenth birthday. For her sixteenth birthday, Mr. Lynch baked C.L. a cake shaped as, and flavored like, a cherry. They continued having a sexual relationship until December of 2009.

{¶11} On cross-examination, C.L. acknowledged that she had previously indicated that her mother's boyfriend had engaged in inappropriate contact with her at one point in time. However, she admitted that these allegations were false. C.L. also confirmed that she had reported to police that the sexual relationship between Mr. Lynch and herself had begun in June of 2009 and lasted for fourteen months. However, at trial she maintained that the sexual relationship began in the early morning hours of July 5, 2009, and continued until December of 2009.

{¶12} C.L.'s mother testified that she lived with her boyfriend and C.L. She further testified that she and her ex-husband ("C.L.'s father") were not C.L.'s biological parents. C.L.'s mother maintained that C.L.'s birthday is August 31, 1993, and that she and her then husband had taken C.L. into their home when she was almost three years old. After twenty-five years of marriage, C.L.'s mother and father got a divorce. However, they maintained a good relationship.

C.L. would often visit and spend the night at C.L.'s sister's and father's home, both before and after Mr. Lynch moved in. In 2010, C.L's mother noticed that C.L. had become very emotional. On April 6, 2010, C.L.'s mother inquired of C.L. what was wrong with her, and C.L. began to cry and explained that Mr. Lynch had sex with her. C.L.'s mother then reported this to the Sheriff's Department, and C.L. made a written statement, which was admitted into evidence.

{¶13} On cross-examination, C.L.'s mother admitted that she had made a threatening remark to Mr. Lynch shortly after meeting him, in which she stated he had better not do anything to disrupt her family.

{¶14} The defense provided the testimony of C.L.'s father, C.L.'s sister, and a friend of Mr. Lynch. C.L.'s father maintained that he and C.L.'s mother took C.L. in when she was ten or eleven years old. He and C.L.'s mother eventually got divorced because she had brought home another man. He maintained that C.L.'s mother lied frequently. According to C.L.'s father, on April 6, 2010, after C.L. made her report about Mr. Lynch to police, she came into her father's room and told him that her mother had told her to lie about Mr. Lynch to the police because her mother did not like him.

{¶15} On cross-examination, when asked what C.L.'s birthday was, her father could not recall a date or year, but did testify that he believed it was in August.

{¶16} C.L.'s sister testified that, when she was fourteen years old and C.L. was three, C.L. came to live with her family. In 2008, C.L.'s sister was dating Mr. Lynch, and they went out to dinner with C.L. At dinner, C.L. informed her sister that their mother's boyfriend had been having sex with her. However, once C.L.'s sister started asking her questions about this, C.L. admitted that she was making it up, and stated that she "hated his guts," and wanted her sister to lie to help her get rid of him. On April 6, 2010, C.L.'s mother called C.L.'s sister and

told her that Mr. Lynch had been having sex with C.L. After receiving this call, she went to C.L.'s home. At the house, C.L. told her sister that nothing had happened between her and Mr. Lynch prior to her sixteenth birthday except that, on the 4th of July, he had kissed her and touched her leg. C.L.'s sister recalled the 4th of July gathering she had at her house, and she specifically remembered that C.L. was not permitted to spend the night because she was grounded. C.L. told her sister that nothing else happened prior to her sixteenth birthday because it would have been illegal. C.L., C.L.'s sister, and their mother went to the police station to report Mr. Lynch's behavior, and C.L.'s sister overheard an officer advise C.L's mother that, if C.L. was over sixteen when the sexual conduct occurred, there was nothing the police could do. C.L.'s sister recalled that her mother became very angry when the officer informed her of this. Later, C.L. changed her story, and told her sister that she and Mr. Lynch had oral and anal sex prior to her turning sixteen.

{¶17} A friend of Mr. Lynch, Joseph Isabella, testified that he used to work handyman jobs with Mr. Lynch. When they had a job scheduled in the area, he would stay at C.L.'s sister's house. He recalled that C.L. had made accusations against her mother's boyfriend, and he further recalled C.L.'s mother stating that C.L. was no longer permitted to discuss with the residents of C.L.'s sister's house what was transpiring at C.L.'s house. Mr. Isabella recalled that Mr. Lynch's mother had come to live with C.L.'s sister and Mr. Lynch for some time. During this time, he observed C.L.'s mother twice attempt to sabotage Mr. Lynch's mother's living arrangements. Once, she came into C.L.'s sister's kitchen, turned on a stove burner, and then blamed Mr. Lynch's mother for leaving on the burner. On another occasion, he witnessed C.L.'s mother dump coffee grinds in the reservoir of the coffee pot, and she again blamed Mr. Lynch's

mother for having done so. He also heard C.L.'s mother tell Mr. Lynch on one occasion that if he disturbed her family arrangements, he would be sorry.

{¶18} In support of his argument that his conviction was against the weight of the evidence, Mr. Lynch challenges C.L.'s and her mother's credibility on the basis that C.L's testimony was inconsistent with her prior statement to police officers, and that her testimony and her mother's testimony was inconsistent with the testimony of the defense witnesses, and was not credible. Although the record demonstrates that CL's account of the events changed somewhat over time, and the testimony of CL and her mother was inconsistent with that of the defense witnesses, the trial court was "free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). The finder of fact is best able to judge the credibility of witnesses because the finder of fact is present to "view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). Further, "A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events." *See State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18

{¶19} Mr. Lynch also specifically challenges the weight of the evidence establishing C.L.'s age as being less than sixteen years old at the time of alleged sexual conduct. However, C.L. and her mother testified that C.L.'s birthday was at the end of August, 1993, and that she came to live with them when she was two years old. *See State v. Peterson*, 5th Dist. Columbiana No. 06 CO 26, 2007-Ohio-4980, ¶ 88, *State v. Hake*, 11th Dist. Trumbull No. 2007-T-0091, 2008-Ohio-1332, ¶ 23 (a victim's testimony as to her birthdate is sufficient evidence to prove

age). Both testified that she was fifteen years old in July of 2009. Although C.L.'s father maintained that C.L. was ten or eleven years old when she came to live with them, he did not contradict the testimony as to C.L.'s birthday. Based upon the testimony as to C.L.'s age, we conclude that the trial court did not lose its way in determining that C.L. was fifteen years old in July of 2009.

{¶20} After a review of the record, we cannot conclude that this is the extraordinary case where the trial court created a manifest miscarriage of justice in finding Mr. Lynch guilty of unlawful sexual conduct with a minor. Accordingly, Mr. Lynch's sole assignment of error is overruled.

III.

{¶21} Mr. Lynch's assignment of error is overruled. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.