[Cite as *State v. Flowers*, 2014-Ohio-3087.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     12CA010295 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GREGORY FLOWERS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     11CR082651 |

DECISION AND JOURNAL ENTRY

Dated: July 14, 2014

MOORE, Judge.

{¶1}    Defendant-Appellant, Gregory Flowers, appeals from the September 28, 2012 judgment entry of the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}    In 2011, the Lorain County Grand Jury indicted Mr. Flowers on one count of sexual battery, in violation of R.C. 2907.03(A)(2), a felony of the third degree, and one count of sexual battery, in violation of R.C. 2907.03(A)(3), also a felony of the third degree.  These charges stemmed from allegations made against Mr. Flowers by his son's former fiancé, D.O.  Mr. Flowers pleaded not guilty to both counts, and the matter proceeded to jury trial.  The jury found Mr. Flowers guilty of count one, sexual battery, in violation of R.C. 2907.03(A)(2), and not guilty of the other charge.  The trial court sentenced Mr. Flowers to twenty-four months of imprisonment.

{¶3} Mr. Flowers timely appealed, and raises three assignments of error for our consideration. In order to facilitate our discussion, we will address Mr. Flowers' assignments of error out of order.

II.

**ASSIGNMENT OF ERROR I**

THE COURT ALLOWED AN EXPERT FOR THE STATE TO TESTIFY THAT [D.O.'s] VAGINAL INJURIES WERE CAUSED BY A SEXUAL ASSAULT. WHETHER A SEXUAL ASSAULT OCCURRED WAS THE ONLY DISPUTED FACT IN THE TRIAL AND SHOULD HAVE BEEN DECIDED BY THE JURY AND NOT TESTIFIED TO BY THE STATE'S EXPERT.

{¶4} In his first assignment of error, Mr. Flowers argues that the trial court abused its discretion when it allowed Denise Miller, R.N., a sexual assault nurse examiner, to testify as to the ultimate issue in this case: whether D.O.'s injuries were caused by a sexual assault.

{¶5} "The decision to admit or exclude evidence lies in the sound discretion of the trial court." *State v. Wright*, 9th Dist. Lorain No. 05CA008675, 2006-Ohio-926, ¶ 5, citing *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *Wright* at ¶ 5. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶6} Pursuant to Evid.R. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." "Rather, its admission depends upon how helpful the opinion is to the jury and whether the issue is one that might be beyond an ordinary juror's understanding." *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 58, citing *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), paragraphs one and two of the

syllabus (holding that the existence or nonexistence of an ultimate fact is generally the province of the jury, but that an expert may express an opinion on the same if the issue is one "beyond the experience, knowledge or comprehension of the jury").

{¶7}   Here, Nurse Miller testified during direct examination that she has been employed as a nurse since 1983, and, specifically, as a sexual assault nurse examiner since 2001.  On April 1, 2011, Nurse Miller examined D.O. based on allegations of a sexual assault.  Nurse Miller explained that she "look[ed] [D.O.] over head to toe for injuries," performed a rape kit and genital exam, and wrote a report.

{¶8}   On cross-examination of Nurse Miller, the following testimony ensued as to the extent of D.O.'s injuries:

\* \* \*

Q.  Okay.  In your head to toe exam of [D.O.], based on your review of the report, your recollection of the events that evening or that next morning did you note any injuries on her?

A.  No injuries on her body, just to the vaginal area.

Q. That would be suggestive that she had engaged in some sort of sexual activity?

A.  Yes.

\* \* \*

{¶9}   Then, on re-direct examination, the State also questioned Nurse Miller about D.O.'s injuries, and the trial court allowed the testimony over Mr. Flowers' objections:

Q. On cross-examination, [Nurse] Miller, you testified that there were no injuries to [D.O.'s] body but to her vaginal area, if you could explain that.

\* \* \*

A. Okay. She had a laceration at the 6:00 mark in the vaginal area and also I have here that she had dye uptake. We use a dye called toluidine blue to see any injuries, and she had an abrasion that was like circular around the vaginal opening.

Q. And what could cause that, based upon your experience and knowledge?

* * *

THE COURT: You ought to lay a foundation, more foundation.

*Q. Have you seen injuries such as that before through your employment?*

*A. Yes.*

*Q. Okay. And what have you learned causes injuries such as that?*

*A. A sexual assault.*

* * *

(Emphasis added.)

{¶10} On re-cross, Nurse Miller agreed that her "observations of the vaginal area are consistent with somebody having sex[.]"

{¶11} As indicated above, Nurse Miller was asked whether she had seen injuries such as the one in this case through her employment. She was then asked what *she had learned* causes injuries such as those, and responded, "a sexual assault." In essence, Nurse Miller's testimony indicated that, through her employment, she had previously seen injuries *such as those* found near D.O.'s vaginal area, and that she had learned that *those* injuries were caused by sexual assault. Upon review of Nurse Miller's testimony, while the questioning was imprecise, one could reasonably read it to mean that D.O.'s injuries are consistent with those types of injuries that Nurse Miller had seen, and subsequently learned, were caused by a sexual assault,

rather than a statement of fact that D.O.'s injuries were caused by a sexual assault. The trial court did not err in allowing the testimony.

{¶12} Accordingly, Mr. Flowers' first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[MR. FLOWERS'] CONVICTION WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE. THE TRIAL COURT ERRED IN DENYING [MR. FLOWERS'] MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE.

{¶13} In his third assignment of error, Mr. Flowers sets forth a general sufficiency of the evidence challenge, but fails to make *any* specific arguments as to why his conviction for sexual battery is not supported by sufficient evidence. Instead, Mr. Flowers directs this Court to revisit the argument in his second assignment of error regarding manifest weight, which is examined under a different legal standard.

{¶14} In determining whether a conviction is supported by sufficient evidence:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Id*.

{¶15} Here, a jury found Mr. Flowers guilty of sexual battery, in violation of R.C. 2907.03(A)(2), a felony of the third degree. R.C. 2907.03(A) states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired. * * * "

{¶16}  It is well settled that Mr. Flowers, as the appellant, has the burden on appeal.  *See* App.R. 16(A)(7); Loc.R. 7(B)(7).  "It is not the function of this [C]ourt to construct a foundation for [Mr. Flowers'] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."  *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996).  Because Mr. Flowers has not developed an argument to support his sufficiency challenge, we decline to conduct a sufficiency analysis.  *See State v. Wilson*, 9th Dist. Summit No. 25100, 2011-Ohio-4072, ¶ 21.

{¶17}  Accordingly, Mr. Flowers' third assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE JURY ERRED TO THE DETRIMENT OF [MR.] FLOWERS BY FINDING HIM GUILTY OF COUNT I AS THERE WAS NO CREDIBLE EVIDENCE PRESENTED THAT [D.O.'s] ABILITY TO APPRAISE THE NATURE OF OR CONTROL HER CONDUCT WAS SUBSTANTIALLY IMPAIRED.

{¶18}  In his second assignment of error, Mr. Flowers argues that it was against the manifest weight of the evidence for the jury to have concluded that he *knew* D.O. was impaired, because no credible evidence was presented as to this issue at trial.  Specifically, Mr. Flowers argues that: (1) D.O. testified that she only had three shots spaced out over time, (2) D.O. testified that this was not the first time she had consumed alcohol, and had been drunk on prior occasions, and (3) Nurse Miller testified that D.O. did not mention drinking during her examination.

{¶19}  In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

{¶20} As previously stated, a jury found Mr. Flowers guilty of sexual battery, in violation of R.C. 2907.03(A)(2), a felony of the third degree. R.C. 2907.03(A) states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.* * * " Additionally, pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶21} As part of the State's case-in-chief, D.O. testified that she was "partying" and drank "[f]our or five" shots of E & J liquor. Further, she testified that, while drinking the shots, she felt "[o]kay in the beginning," but then got a headache and became drowsy. D.O. also testified that: (1) Mr. Flowers was aware she was drinking that night, (2) Mr. Flowers supplied her with the first shot of alcohol, (3) the apartment they were partying in was "kind of small," (4)

when Mr. Flowers woke her from sleeping on the couch, she was "dizzy" and "couldn't really stand by [herself]," (5) Mr. Flowers helped her to the bedroom where she would later awaken to hear Mr. Flowers saying that he was going to ejaculate, and to find her legs over her head and her underwear and shorts around her ankles, and (6) she felt more intoxicated than ever before. We note that, on cross-examination, D.O. testified that she consumed "around" three shots over a period of time, which varies slightly from her testimony during direct examination.

{¶22} Officer Ralph Gonzalez, a patrol officer with the Lorain Police Department, also testified on behalf of the State as follows:

* * *

Q. [D]id you have the opportunity to respond to a call at 2616 West Erie Avenue, Apartment H?

A. Yes, ma'am.

Q. What was your understanding as to what you were responding to?

A. A rape complaint which had just occurred.

Q. What did you do once you got there? What did you observe?

A. A hysterical female crying, talked to her, and proceeded from there.

* * *

Q. Could you explain a little bit more in detail what [D.O.'s] demeanor was like?

A. She was weeping, in a highly emotional state. Like I [said], crying, screaming, very emotional.

* * *

Q. And were you able to make contact with Mr. Flowers?

A. * * * Yes, ma'am.

* * *

Q. Did [Mr. Flowers] deny having contact with [D.O.]?

A. No. Not contact. Apparently they had all been drinking rather heavily.

Q. And why do you say that?

A. Well, they were all intoxicated.

Q. How could you tell?

A. I've been a policeman for 20 years, and before that I was a policeman in the Air Force for ten years; I know a drunk when I see a drunk. They were all intoxicated. I mean they were all blurry-eyed, they were all slurred speech. I mean they were all intoxicated. The whole residence stank of alcohol.

\* \* \*

{¶23} It is well-settled that "[t]he finder of fact is best able to judge the credibility of witnesses because the finder of fact is present to 'view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Lynch*, 9th Dist. Lorain No. 13CA010357, 2014-Ohio-968, ¶ 18, quoting *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). Further, "A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events." *See State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18.

{¶24} Here, the jury heard D.O. testify that she and Mr. Flowers had been partying and drinking in a *small* apartment, that she had somewhere between three to five shots over the course of the evening, and that Mr. Flowers gave her the first shot of E & J liquor. Additionally, D.O. testified that when she awoke from sleeping on the couch, she was dizzy and Mr. Flowers helped her to bed. Further, Officer Gonzalez testified that everyone in the apartment was intoxicated with blurry eyes and slurred speech, and the entire apartment smelled like alcohol. Based upon this testimony, it was reasonable for the jury to infer that Mr. Flowers knew that D.O.'s ability to appraise the nature of or control her own conduct was substantially impaired.

*See* R.C. 2907.03(A)(2); *see also State v. Jarvis*, 9th Dist. Summit No. 25481, 2011-Ohio-4491, ¶ 11 (where this Court affirmed Mr. Jarvis' conviction for sexual battery, relying upon the victim's and her neighbors' testimony that she was substantially impaired, stating "[e]ven if [Mr.] Jarvis did not personally observe [the victim] consume large amounts of alcohol, he did walk her home from a bar close to 2 a.m.")  Also, in *State v. Mathers*, 9th Dist. Lorain No. 07CA009242, 2008-Ohio-2902, ¶ 23, this Court affirmed Mr. Mathers' conviction for sexual battery, concluding that he knew the victim was substantially impaired because he knew she had "spent the evening at a bar drinking alcohol." As such, we cannot say that the jury clearly lost its way, or that a manifest miscarriage of justice occurred, in finding Mr. Flowers guilty of sexual battery. *See Otten*, 33 Ohio App.3d at 340.

{¶25}  Accordingly, Mr. Flowers' second assignment of error is overruled.

## III.

{¶26}  In overruling Mr. Flowers' three assignments of error, the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT


BELFANCE, P.J.
CARR, J.
CONCUR

APPEARANCES:

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, for Appellee.